WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Louis Russo,<br><br>         Plaintiff,<br><br>v.<br><br>Pelican Partners International S. de R.L. de C.V., et al.,<br><br>         Defendants. | No. CV-15-02001-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Michael Russo's motion for default judgment against Defendants Pelican Partners International S. de R.L. de C.V. ("Pelican International"), and Pelican Partners International, LLC ("Pelican Partners"), pursuant to Fed. R. Civ. P. 55(b). (Doc. 11). No response has been filed by Defendants. The Court will grant the motion.

## I.   Background

This action commenced on October 6, 2015, when Plaintiff's Complaint was filed. (Doc. 1). The Defendants named in this action failed to answer the Complaint or file any motion to dismiss in accordance with Federal and Local Rules. On November 25, 2015, upon application, the Clerk of the Court entered default against Pelican International and Pelican Partners pursuant to Rule 55(a). (Doc. 10). Plaintiff thereafter filed the pending motion for default judgment. (Doc. 11).

On February 25, 2016, this Court Ordered Plaintiff to show cause why Defendants

Jonathan Beck and Alessandra Beck should not be dismissed from the action for failure to serve in accordance with Fed. R. Civ. P. 4(m). (Doc. 14). Following the March 1 hearing, the Becks were dismissed.[1] (Doc. 15). Plaintiff subsequently filed a Motion for Entry of Judgment pursuant to Fed. R. Civ. P. 54(b),[2] (Doc. 16), and renewed his motion for default judgment. (Doc. 17 at 2). Since the default was entered on November 25, 2015, neither Pelican International nor Pelican Partners have responded in any capacity.

Upon entry of default, the factual allegations of the Complaint, except those relating to the amount of damages, are taken as true. *Yoo v. Arnold*, 615 Fed. Appx. 868, 870 (9th Cir. 2015); *Fair Housing of Marin. v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Televideo Systems*, *Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). The Court thus accepts as true the well-pleaded facts contained in the Complaint. (Doc. 1).

## II.   Default Judgment

Fed. R. Civ. P. 55(a) establishes that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . . the clerk shall enter the party's default." Once a default has been entered, and a defendant fails to appear to move to set aside the default, then the Court may enter a default judgment pursuant to Fed. R. Civ. P. 55(b)(2). The "general rule" with respect to default judgments is that they "are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citing *Pena v. Sequros La Comercial*, *S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Nonetheless, "[g]ranting default judgment is within the court's discretion." *EEOC v. Recession Proof United States LLC*, No. 11-CV-01355-PHX-BSB, 2013 U.S. Dist. LEXIS 171524, at *8 (D. Ariz. Aug. 19, 2013).

---

[1] At the hearing, Plaintiff acknowledged that the Becks should be dismissed from the case and urged the Court to do so.

[2] As the Becks have been dismissed from this action, Plaintiff has moved for default judgment against all remaining Defendants, rendering Plaintiff's Rule 54(b) motion unnecessary. The Court understands that Plaintiff filed the aforementioned motion at the Court's request.

Plaintiff moves the Court to exercise its discretion and enter default judgment against Defendants Pelican International and Pelican Partners for each of the Complaint's claims. In determining whether default judgment is appropriate, the Court is guided by consideration of the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72 (citation omitted). The Court will address each of the applicable factors in turn.

**A.     Possible Prejudice to Plaintiff**

The first *Eitel* factor weighs in favor of granting Plaintiff's motion, as Plaintiff will be prejudiced if default judgment is not entered in its favor. As noted *supra*, at no point have Defendants responded to this action, and the record reflects that Plaintiff gave proper notice. (Docs. 6, 7). If the motion for default judgment is not granted, Plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also United States v. $86,496.00 in United States Currency*, No. CV-07-1693-PHX-DGC, 2008 U.S. Dist. LEXIS 115052, at *4-5 (D. Ariz. July 1, 2008) (citation omitted).

**B.     Merits of Plaintiff's Claims**

Where, as here, a default has been entered, the factual allegations of the Complaint are taken as true. However, for this factor to weigh in favor of granting a motion for default judgment, a plaintiff must plead sufficient facts to "state a claim on which it may recover, which often requires establishing a prima facie case." *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 U.S. Dist. LEXIS 12449, at *8-9 (W.D. Wash. Jan. 31, 2014) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *see also*

*Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Thus, the Court must analyze each of Plaintiff's four distinct claims against Defendants: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) negligent misrepresentation by omission; and (4) negligence per se.[3]

### 1. Breach of Contract

The Complaint first alleges that Defendants breached a written contract between themselves and Plaintiff. The Court notes at the outset that Plaintiff failed to attach to the Complaint any of the documents relied upon in support of his claim, which is perplexing.[4] Nonetheless, upon entry of default, the factual allegations of the Complaint, excepting damages, are taken as true. *Yoo*, 615 Fed. Appx. at 870. Having reviewed the Complaint, the Court finds that Plaintiff has made out a prima facie claim.

A breach of contract clam requires proof of the existence of a contract, breach, and resulting damages. *Thomas v. Montelucia Villas*, *LLC*, 302 P.3d 617, 621 (Ariz. 2013). Here, the Complaint alleges that on September 29, 2002, Plaintiff "executed a purchase and sale agreement" with Defendants "to purchase a condominium unit at Bella Sirena"

---

[3] Plaintiff's Complaint contains a section titled "Unlawful Acts (ARS § 12-2301 *et seq.*)." (Doc. 1 at 9-10). This portion of the Complaint, however, appears to be a basis for claiming treble damages, as opposed to a separate cause of action against Defendants. In any event, the Court finds that Plaintiff has pleaded insufficient facts and proffered insufficient evidence to be entitled to default judgment on this issue. The Complaint simply asserts that "Pursuant to the Unlawful Acts statutes, [P]laintiff is entitled to compensatory damages in the amount of $233,910.00, treble damages, as well as attorneys' fees and costs incurred in connection with this action. (*Id.* at 10). Likewise, Plaintiff's motion for default judgment simply asserts that under the "Unlawful Acts" statutes of the state of Arizona, he is entitled to treble damages. (Doc. 11-1 at 44). The Complaint only cites to A.R.S. § 13-2301 *et seq.*, which is the entire Arizona criminal code. § 13-2301 itself is a definitional section, and the Complaint notes or discusses no other statutory provisions. Plaintiff has therefore failed to provide the Court with any basis to establish a justification to award treble damages, and the motion is denied as to this point.

[4] In determining whether Plaintiff has stated a meritorious claim based on the facts pleaded in the Complaint, the Court may consider "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy . . . ." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (discussing what the court may consider in a motion to dismiss).

in Mexico. (Doc. 1 at 3). The facts further allege that on May 8, 2004, the parties executed a "Promise of Trust" which obligated Defendants to transfer ownership of the property and title to the unit through an "irrevocable transfer of ownership trust, known as a *fideicomiso* in Mexico." (*Id.* at 4). During the intervening months, Plaintiff tendered a down payment on the unit, and made several installment payments, totaling $233,910 towards the purchase of the condominium, completing Plaintiff's obligations under the agreement. The Promise of Trust further committed Defendants "to warrant and defend [Plaintiff's] clear title to the unit." Defendants have failed to deliver clean title to Plaintiff, and have failed to defend Plaintiff's title. A construction dispute arose in 2006—which Plaintiff was never made aware of—and in 2014, Plaintiff learned from the condominium's Homeowners Association that the resolution of the "construction dispute" resulted in a judgment that stripped Plaintiff of ownership of the property. (*Id.* at 5-6). At no point was Plaintiff given title to the property, at no point did Defendants inform Plaintiff of legal proceeding that could affect his status as owner, and at no point did Defendants endeavor to defend Plaintiff's title.

Based on the preceding facts, taken as true, Plaintiff has made out a prima facie case that he entered into a written agreement with Defendants, carried out his contractual obligations, and that Defendants failed to carry out their own obligations when they failed to deliver title to the unit to Plaintiff. It follows that Defendants have breached, and Plaintiff has suffered $233,910 in damages, the amount tendered to Defendants for delivery of clean title to the at-issue property.

### 2. Breach of the Covenant of Good Faith and Fair Dealing

Arizona recognizes the covenant of good faith and fair dealing, an implied covenant present in all contracts, as a matter of law. *See United Dairymen of Ariz v. Shugg*, 128 P.3d 756, 760 (Ariz. Ct. App. 2006) (recognizing that "[a]ll contracts as a matter of law include the implied duties of good faith and fair dealing, and contract damages are available for their breach"). "A party can breach the implied covenant of

1   good faith and fair dealing without breaching an express provision of the underlying
2   contract." *Id.* (citing *Beaudry v. Ins. Co. of the West*, 50 P.3d 836, 841 (Ariz. Ct. App.
3   2002)). Breach of this implied covenant may occur where a party acts "in ways not
4   expressly included in the contract but which nonetheless bear adversely on the other
5   party's reasonably expected benefits of the bargain." *Id.* (citing *Bike Fashion Corp. v.
6   Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002)). Stated another way, "[t]he implied
7   covenant of good faith and fair dealing prohibits a party from doing anything to prevent
8   the other contracting parties from receiving the benefits of the agreement." *Enyart v.
9   Transamerica Ins. Co.*, 985 P.2d 556, 561 (Ariz. Ct. App. 1998).

10   Plaintiff's Complaint alleged two instances of Defendants' behavior that constitute
11   breach the implied covenant of good faith and fair dealing: (1) Defendants failed to
12   timely deliver clean title of the condominium property to Plaintiff; and (2) Defendants
13   failed to "mount a defense in litigation in Mexico against [Plaintiff's] equitable title to the
14   subject property." (Doc. 1 at 8). Plaintiff has also asserted that these identical failures by
15   Defendants constitute breach of contract's express terms. (*Id.*). Although a party need not
16   violate the express terms of a contract to breach the implied covenant of good faith and
17   fair dealing," *Wells Fargo Bank v. Ariz. Laborers*, *Teamsters & Cement Masons Local
18   No. 395 Pension Trust Fund*, 38 P.3d 12, 29 (Ariz. 2002) (citation omitted), these actions
19   are plainly consistent with acting in a way to prevent the other party from "receiving the
20   benefits of the agreement." *Enyart*, 985 P.2d at 561. The Complaint alleges that
21   Defendants accepted payment of $233,910.00 from Plaintiff over a period of two years,
22   frequently reassured Plaintiff that they were endeavoring to fulfill their contractual
23   obligations, failed to deliver clean title to the property, failed to ever notify Plaintiff of
24   any ongoing litigation in Mexico concerning the property, and failed to mount a good
25   faith defense on Plaintiff's behalf. Plaintiff has pleaded a prima facie claim that
26   Defendants breached the implied covenant of good faith and fair dealing.

27   Plaintiff has presented no evidence to indicate that the contract between himself
28   and Defendants allowed for the recovery of liquidated damages. Accordingly, ordinary

- 6 -

contract damages are the "proper measure of damages for this breach." *United Dairymen of Ariz.*, 128 P.3d at 762 (citing *Enyart*, 985 P.2d at 561).

### 3.     Negligent Misrepresentation by Omission

Plaintiff's Complaint also includes a claim for "negligent misrepresentation by omission." (Doc. 1 at 10). Plaintiff alleges that Defendants were "acutely aware of the disputes and legal actions that threatened the clean title to [Plaintiff's] property" and thus are liable to Plaintiff under this theory of recovery for failing to disclose that they would be unable to deliver clean title, and for failing to disclose "that legal actions had commenced in the United States and Mexico that directly threatened title to the subject property." (*Id.* at 10-11).

"Arizona common law has, under some circumstances, imposed on a seller a duty to disclose." *Alaface v. National Inv. Co.*, 892 P.2d 1375, 1384 (Ariz. Ct. App. 1994); *see also Hill v. Jones*, 725 P.2d 1115 (Ariz. Ct. App. 1985); *Frazier v. Southwest Sav. And Loan Ass'n*, 653 P.2d 362 (Ariz. Ct. App. 1982). Generally, "[a] duty to speak . . . will be imposed on a party to a business transaction 'if he knows that the other is about to enter into it under a mistake as to facts basic to the transaction, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Alaface*, 892 P.2d at 1384-85 (quoting *Frazier*, 653 P.2d at 367-68). Where a party "has such knowledge, then a duty will be imposed to exercise reasonable care to disclose such facts to the other party." *Id.* (quoting *Frazier*, 653 P.2d at 367-68). Stated in other terms, "[s]uppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation." *Leigh v. Loyd*, 244 P.2d 356, 358 (Ariz. 1952).

The duty to disclose is amplified when "disclosure would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if nondisclosure amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." *Hill*, 725 P.2d at 1118 (citation omitted). In terms of

crystalizing a test, the Arizona Court of Appeals has looked favorably on the test articulated by the Florida Supreme Court, recognizing that "where the seller of a [property] knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." *Id.* (quoting *Johnson v. Davis*, 480 So.2d 625, 629 (Fla. 1985)).

Plaintiff's principal theory of recovery under this claim centers on Defendants' knowledge that they could not deliver clean title to the Plaintiff's property when the parties entered into a contractual agreement. (Doc. 1 at 10). The Complaint alleges that in "mid" 2002, Plaintiff was solicited by Defendants to purchase a condominium unit. (*Id.* at 3). On September 29, 2002, Plaintiff executed a purchase and sale agreement. (*Id.*). On March 30, 2002, Plaintiff made a down payment to Defendants for $60,727.[5] (Doc. 11-1 at 9). On January 31, 2003, Plaintiff made an installment payment of $45,545.75. (*Id.*). Plaintiff thereafter made three identical, additional installment payments between September 15, 2003, and May 14, 2004. (*Id.*). In total, Plaintiff made eight payments to Defendants totaling $235,537.10.[6] (*Id.*). On May 8, 2004, a "Promise of Trust" agreement was executed between the parties, which obligated Defendants to "transfer ownership of the unit to [Plaintiff] via an irrevocable transfer of ownership trust, known as a *fideicomiso* in Mexico." (Doc. 1 at 4). The Promise of Trust further committed Defendants to "warrant and defend [Plaintiff's] clear title to the unit." (*Id.* at 5).

Despite the Complaint's allegation that Defendants had knowledge of "legal actions [that] had commenced in the United States and Mexico that directly threatened title to the subject property," (Doc. 1 at 11), a review of the Complaint reveals that the only mention of any "legal actions" is restricted to a 2006 "construction dispute [that]

---

[5] The Court notes that Plaintiff made a down payment six months prior to signing any written agreement with Defendants. Plaintiff does not account for the discrepancy, and does not allege sufficient facts to establish why the down payment preceded entering into a written agreement by such a large period of time.

[6] Three payments totaling $1,627.10 were also made to Defendants. (Doc. 11-1 at 9). Two are listed as "tax" payments and one is listed as an "option" payment. (*Id.*). The record does not establish what these expenditures account for.

- 8 -

arose between" Pelican International and the General Contractor it had retained to construct the property at issue in this action.[7] (*Id.* at 5). The Complaint mentions no other legal action, either in the United States or Mexico, and the above-mentioned action is what ultimately led to Plaintiff losing ownership of his condominium unit. (*Id.* at 6). The duty to speak "will be imposed on a party to a business transaction 'if he knows that the other *is about to enter into it* under a mistake as to facts basic to the transaction.'" *Alaface*, 892 P.2d at 1385 (emphasis added) (quoting *Frazier*, 653 P.2d at 367-68). Here, the parties entered into a contractual agreement on September 29, 2002, or, at the latest, May 8, 2004, when the Promise of Trust agreement was executed. (Doc. 1 at 4). The Complaint contains no pleaded facts suggesting that Defendants had knowledge—at that time—of current or likely to arise legal actions that would threaten their ability to deliver clean title to the property. Accordingly, the Complaint fails to plead sufficient facts to establish a claim of negligent misrepresentation by omission.

**4.     Negligence Per Se**

Plaintiff's final claim is one for negligence per se, alleging that Defendants failed to deliver to him at any point a Subdivision Public Report, as is required by A.R.S. § 32-2181 *et seq.* (2015). (Doc. 12-14). A violation of a statute enacted to protect public safety, such as the subdivision disclosure statutes, constitutes negligence per se. *Alaface*, 892 P.2d at 1385.

Plaintiff correctly notes that Arizona law provides that "before offering subdivided lands for sale or lease, the owner, agent or subdivider must notify the real estate commissioner in writing of the intention to do so." *Alaface*, 892 P.2d at 1381 (citing A.R.S. § 32-2181 (A)). "The owner, agent or subdivider must then furnish each prospective buyer of a subdivision lot with a copy of the report." *Id.* (citation omitted). At

---

[7] An exhibit attached to Plaintiff's Motion for Default Judgment, (Doc. 11-1 at 11), suggests that the "legal action[]" the Complaint alleges was in fact "filed in 2005 by seven Mexican citizens against Pelican Partners, the developer of the resort." Whether the suit was initiated in 2005 or in 2006 is not dispositive. Both dates fall after the parties to this action executed a contractual agreement to purchase a condominium.

no point have Defendants furnished Plaintiff with a copy of this report.

Nonetheless, Plaintiff has failed to point to any statutory provision, or state regulation, indicating that the Arizona subdivision disclosure statutes apply to a Mexican corporate entity and a Washington limited liability company[8] agreeing to sell a condominium unit located in Mexico to an Arizona resident. Moreover, provisions of the Arizona Revised Statutes indicate that the legislation was intended to regulate the subdivision and sale of property located *in* Arizona. *See* A.R.S. § 32-2181 (A) (establishing that a map of the subdivision must be "filed in the office of the county recorder in which the subdivision is located" along with data concerning local public schools, sewage and solid waste collection, water, electricity, gas and telephone lines"). The Court, after reviewing the subdivision disclosure statutes, A.R.S. § 32-2181 *et seq.*, was similarly unable to readily discern whether the legislation applies to foreign corporations selling subdivided property *outside* of the state of Arizona. Absent any indication to the contrary, the Court finds that Plaintiff has failed to establish that Defendants were required by Arizona law to furnish him with a copy of a Subdivision Public Report under A.R.S. § 32-3183 (A).

In sum, Plaintiff has alleged four claims against Defendants, and the pleaded facts, taken as true, make out a meritorious claim of breach of contract and breach of the covenant of good faith and fair dealing. Although two claims failed to state a valid claim for relief, the meritorious claims are central to the action, involving the parties' written agreement to sell a condominium being developed by Defendants. Accordingly, while only half of Plaintiff's claims have merit, the second *Eitel* factor weighs slightly in favor of granting Plaintiff's motion for default judgment.

C. **The Sufficiency of the Complaint**

The Ninth Circuit has suggested that the third *Eitel* factor requires that Plaintiff's

---

[8] Pelican Partners is registered in Arizona as a foreign corporate entity. (Doc. 1 at 2).

- 10 -

Complaint "state a claim on which the [plaintiff] may recover." *Danning*, 572 F.2d at 1388. Based on the Court's analysis of the merits of Plaintiff's breach of contract and covenant of good faith and fair dealing claims, nothing suggests that the Complaint fails to "state a claim on which the [plaintiff] may recover," or that it fails to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The third *Eitel* factor thus favors granting the motion for default judgment.

### D.     Amount at Stake

In considering the fourth *Eitel* factor, the Court must examine "the sum of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176-77. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Gemmel v. Systemhouse, Inc.*, No. CIV 04-198-TUC-CKJ, 2008 U.S. Dist. LEXIS 81469, at *12 (D. Ariz. Jan. 3, 2008). Here, Plaintiff seeks damages totaling $233,910,[9] plus interest, a considerable amount. However, Plaintiff merely seeks damages to recover the payments he made under the contract with Defendants. Further, Plaintiff has proffered documentary evidence to establish that from March 30, 2002, to May 14, 2004, he made five total payments to Defendants totaling $233,910 in exchange for title to the property at issue in this action. (Doc. 11-1 at 9). This matches the amount sought by Plaintiff in his motion as damages. (Doc. 11-2 at 2). Thus, while Plaintiff seeks substantial recovery, it is no more than the amount necessary to make him whole for damages incurred under the breached contract, and the sum is not "completely disproportionate or inappropriate." *Gemmel*, 2008 U.S. Dist. LEXIS 81469, at *12. The fourth *Eitel* factor favors granting default judgment.

### E.     Possible Dispute Concerning Material Facts

Neither Pelican International nor Pelican Partners have responded to this action.

---

[9] Plaintiff seeks $701,730.00 in damages, asserting that he is entitled to treble damages under Arizona law. The Court has previously found that Plaintiff has failed to establish that treble damages are warranted. The actual damages sought total $233,910.

- 11 -

The Complaint was filed on October 6, 2015, (Doc. 1), and the record reflects that the aforementioned Defendants were served on November 2, 2015. (Doc. 6). On November 25, 2015, Plaintiff applied for an entry of default, (Docs. 7,8), which was entered by the Clerk of the Court on the same day. (Doc. 10). In the intervening seven months, no answer was filed, and no relief was sought from the Clerk's entry by Defendants. Upon entry of default, the factual allegations of a Complaint, except those relating to the amount of damages, are taken as true. *Yoo*, 615 Fed. Appx. at 870. There is no dispute concerning material facts, and this factor weighs in favor of granting default judgment. *Getty Images (US)*, 2014 U.S. Dist. LEXIS 12449, at *11-12 (citation omitted) (noting that "[w]hen default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true"); *Landstar Ranger*, *Inc. v. Parth Enters.*, *Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010) (noting that where a plaintiff "has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment").

**F.     Whether Default Was Due to Excusable Neglect**

Defendants have not responded to this action since it was filed, and through their Statutory Agents, were personally served with the Complaint on November 2, 2015. (Doc. 6). Neither Defendants, nor any retained counsel, have offered an explanation for the failure to meet the deadlines associated with this action. Nearly seven months has elapsed between the Clerk's entry of judgment, and this Court's consideration of Plaintiff's motion for default judgment. It is therefore highly unlikely that Defendants' "failure to answer and the resulting default was a result of excusable neglect." *Gemmel*, 2008 U.S. Dist. LEXIS 81469, at *13; *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding that no excusable neglect occurred where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

### G. Policy Underlying the Federal Rules of Civil Procedure

The final factor—the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits—at least initially appears to weigh against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere presence of Fed. R. Civ. P. 55(b) indicates that "this preference, standing alone, is not dispositive." *PepsiCo*, *Inc.*, 238 F. Supp. 2d at 1177. Rule 55 permits termination of a case before the Court hears the merits whenever a defendant fails to defend against an action. Moreover, the failure of Defendants to contest the Complaint or seek relief from the Clerk's entry of default "makes a decision on the merits impractical, if not impossible." *PepsiCo*, *Inc.*, 238 F. Supp. 2d at 1177. Accordingly, the final *Eitel* factor is not sufficient to preclude the Court from entering default judgment.

Having reviewed Plaintiff's motion and analyzed the applicable factors set forth in *Eitel*, the Court finds that factors one through six weigh in favor of granting Plaintiff's motion. The final *Eitel* factor—deciding cases on their merits where reasonably possible—is not sufficient to outweigh the aforementioned six factors. Therefore, for the reasons set forth herein, the Court finds that Plaintiff is entitled to default judgment.

### H. Damages

At the default judgment stage, well-pleaded factual allegations, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability. *TeleVideo Sys.*, *Inc.,* 826 F.2d at 917–18; *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.1977). The court must ensure that the amount of damages is reasonable and demonstrated by the plaintiff's evidence. *See* Fed. R. Civ. P. 55(b); *LG Elecs., Inc. v. Advance Creative Computer Corp.*, 212 F.Supp.2d 1171, 1178 (N.D. Cal. 2002) ("[T]he evident policy of [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages."). And "[a] default

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

As discussed *supra*, Plaintiff seeks actual damages of $233,910, and has asserted that he is entitled to treble damages under Arizona law. The Court previously found that treble damages are not warranted based on the facts contained in the Complaint and Plaintiff's motion. (Doc. 11). Plaintiff is therefore entitled to $233,910 in ordinary contract damages. *United Dairymen of Ariz.*, 128 P.3d at 762 (citing *Enyart*, 985 P.2d at 561).

### III. Prejudgment Interest

Plaintiff also seeks prejudgment interest on the award of damages.[10] (Doc. 1 at 15). "Prejudgment interest may be awarded by default judgment only if demanded in the complaint," *Thompson*, 2011 U.S. Dist. LEXIS 71326, at *41 (citation omitted), as is the case here. Pre-judgment interest is interest that accrues on the amount of a legal award from the time of the injury or damage to the time the judgment is entered by the Court. "In federal diversity actions, Arizona law generally determines the rate of prejudgment interest." *Id.* (citing *Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998)). Prior to July 20, 2011, the statutory pre-judgment "[i]nterest on any loan, indebtedness, judgment or other obligation" was set at 10%, simple, per year. *Envtl. Liners, Inc. v. Ryley, Carlock & Applewhite*, 930 P.2d 456, 462 (Ariz. Ct. App. 1996); A.R.S. § 44-1201 (A) (2010). But amendments to the statute, effective July 20, 2011, set the pre-judgment interest rate at "the lesser of ten per cent per annum or at a rate per annum that is equal to one per cent plus the prime rate as published by the board of

---

[10] Plaintiff's motion for default judgment appears to seek *post*-judgment interest on the award of damages until Defendants satisfy the judgment. (Doc. 11-2 at 2). But the Complaint plainly seeks "prejudgment interest on the sum certain principal damage amount of $233,910.00" (Doc. 1 at 15). Because the Complaint must specifically seek pre-judgment interest in a default judgment action, *Thompson v. StreetSmarts, Inc.*, No. CV-10-1885-PHX-LOA, 2011 U.S. Dist. LEXIS 71326, at *41 (D. Ariz. June 30, 2011) (citation omitted), and Plaintiff's did, the Court will treat Plaintiff's claim as one for pre-judgment interest on a liquidated claim of damages.

- 14 -

governors of the federal reserve system in statistical release H.15," unless the parties "specifically contracted for a different rate in writing." A.R.S. § 44-1201 (B).

Under Arizona law, "prejudgment interest on a liquidated claim is a matter of right." *AMHS Ins. Co. v. Mut. Ins. Co.*, 258 F.3d 1090, 1103 (9th Cir. 2001) (quoting *Gemstar Ltd. v. Ernst & Young*, 917 P.2d 222, 237 (Ariz. 1996) (en banc)). "A claim is liquidated if the plaintiff provides a basis for precisely calculating the amount owed, and the amount of the claim must be capable of exact calculation on the date of accrual." *Sirrah Enters. v. Wunderlich*, 2016 Ariz. App. LEXIS 146, at *14 (Ariz. Ct. App. June 6, 2016) (citing *Scottsdale Ins. Co. v. Cendejas*, 205 P.3d 1128, 1135, 1136 (Ariz. Ct. App. 2009)). The Court finds that Plaintiff's claim is liquidated, as it is capable of exact calculation. Plaintiff made one down payment and four subsequent installment payments to Defendants totaling $233,910. Moreover, Plaintiff proffered documentary evidence itemizing the payments he made to Defendants. *See Scottsdale Ins. Co.*, 205 P.3d at 1136 (citation omitted) (noting that "a demand for a lump sum payment without an itemization is insufficient"). In sum, Plaintiff furnished "data which, if believed, makes it possible to compute the amount [of pre-judgment interest] with exactness, without reliance upon opinion or discretion." *Thompson*, 2011 U.S. Dist. LEXIS 71326, at *41 (quoting *Arizona Title Insurance & T. Co. v. O'Malley Lbr. Co.*, 484 P.2d 639, 649 (Ariz. Ct. App. 1971)).

Plaintiff, however, must also furnish an exact accrual date to be entitled to an award of pre-judgment interest. Under Arizona law, "prejudgment interest on a liquidated claim accrues from the date of demand of a sum certain." *Scottsdale Ins. Co.*, 205 P.3d at 1136 (citing *Alta Vista Plaza, Ltd. v. Insul. Specialists Co., Inc.*, 919 P.2d 176, 178 (Ariz. Ct. App. 1995)). Plaintiff has not presented evidence of any firm date in which he made a demand of Defendants with respect to the $233,910, which would provide Defendants with "sufficient information and supporting data" to determine the amount owed to Plaintiff. *Id.* (citation omitted). The only reasonable date located in the record is January 9, 2014, the date where Plaintiff learned that he no longer owned the Bella Sirena condominium unit he had purchased. (Doc. 1 at 6). This is insufficient to constitute a

demand of a sum certain.

Accordingly, based on the record before it, the Court cannot award Plaintiff pre-judgment interest on the award of damages, as the Court cannot discern a specific date of accrual, a necessary prerequisite to such an award under Arizona law. The Court will permit Plaintiff to file a supplemental brief to remedy the shortcoming.

## IV. Attorneys' Fees

The Complaint seeks an award of reasonable and appropriate attorneys' fees pursuant to A.R.S. § 12-341.01, which allows for the recovery of fees "[i]n any contested action arising out a contract, express or implied." (Doc. 1 at 15). This is an action arising out of the breach of a contract between the parties. But the Arizona Court of Appeals has defined a "contested action" within the context of A.R.S. § 12-341.01(A) as "one in which the defendant has appeared and generally defends against the claims and demands made by the plaintiff." *Morrison v. Shanwick*, 804 P.2d 768, 775 (Ariz. Ct. App. 1990). A number of "Arizona federal judges have recognized *Morrison* as determinative of Arizona law declining an award of attorneys' fees incurred in obtaining an uncontested, default judgment." *Baja Devs. LLC v. TSD Loreto Partners*, *S en C. por A. de C.V.*, No. CV-09-756-PHX-LOA, 2010 U.S. Dist. LEXIS 42551, at *34 (D. Ariz. April 30, 2011); *Thompson*, 2011 U.S. Dist. LEXIS 71326, at *38-39; *Lewis v. Smith*, No. CV-07-1644-PHX-ROS, 2009 U.S. Dist. LEXIS 66321, at *1 (D. Ariz. July 16 2009); *BBQ Hut*, *Inc. v. Maelin Enterprises*, *LLC*, No. CV-06-2050-PHX-FJM, 2008 U.S. Dist. LEXIS 109698, at *2 (D. Ariz. July 3 2008). The Court concurs with this reading of *Morrison* and finds that Plaintiff is not entitled to attorneys' fees, as this action was not "contested" within the meaning of A.R.S. § 12-341.01 (A).

## V. Order

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Entry of Default Judgment, (Doc.

11), is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff has up to and including Wednesday, July 13, 2016, to file a supplemental brief—not to exceed two pages—on the issue of establishing an accrual date for purposes of determining pre-judgment interest on the award of damages.

**IT IS FURTHER ORDERED** that if Plaintiff fails to file his supplemental brief by the end of Wednesday, July 13, 2016, the Clerk of the Court shall enter judgment in favor of Plaintiff for the amount of $233,910.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Entry of Judgment Under Rule 54(b), (Doc. 16), and Plaintiff's Motion for Ruling re. Doc. 16, (Doc. 17), are **DENIED AS MOOT**, as judgment by default has been entered against all remaining Defendants in the matter.

Dated this 5th day of July, 2016.

James A. Teilborg
Senior United States District Judge